[No. 4197-1. Division One. July 5, 1977.]

CARMEN W. LEVANG, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

14

*Robert J. Hall, Inc., P.S., Robert J. Hall,* and *Steven J. Callson,* for appellant.

*Slade Gorton, Attorney General, James S. Kallmer, Assistant,* and *Arthur E. Thomas,* for respondent.

FARRIS, C.J.—In 1972, Carmen W. Levang died following his third heart attack in 4 years. Pending at the time of his death was a claim which he had filed with the Department of Labor and Industries seeking to reopen a previous claim, closed in January of 1967, which had resulted in payment for medical treatment for injuries attributable to employment–related exposure to a highly toxic gas, Tolylene diisocoyante, or TDI, but no award for permanent partial disability. Levang's application to reopen alleged that the condition upon which the previous claim was based had been aggravated by subsequent exposure. He sought a determination that he had become permanently and totally disabled by the employment–related exposure. His application was posthumously denied.

Esther Levang, wife of the deceased, thereafter appealed to the Board of Industrial Insurance Appeals claiming, (a) pursuant to RCW 51.32.040, disability benefits her husband would have been entitled to before death (an appeal

from the department's denial of his application to reopen the previous claim) and (b) pursuant to RCW 51.32.050, a widow's death benefit (an appeal from a denial of her individually filed claim). Her appeal to the board was denied. She thereafter appealed both determinations to the Superior Court which granted the department's motion for a nonsuit. This appeal followed. We reverse.

Mrs. Levang based her claim under RCW 51.32.050 on the theory that her husband's death was proximately caused by exposure to TDI before and after the closing of the previous claim in 1967. She alleges that the exposure either weakened a healthy heart or activated a latent heart defect. Her claim under RCW 51.32.040 is based on the theory that her husband's condition was proximately caused by the 1964 exposure and subsequent aggravations.

The pivotal question is whether, as a matter of law, the record fails to support a reasonable difference of opinion on the question of proximate cause. The evidence and all reasonable inferences therefrom must be taken as true and interpreted in the light most favorable to Mrs. Levang. *Venezelos v. Department of Labor & Indus.*, 67 Wn.2d 71, 406 P.2d 603 (1965). She argues that the testimony of Drs. Sargent and Baker establish chemical poisoning as the proximate cause of the disability and death. While she does not contend that their statements were unequivocal, she asserts that they establish sufficient probability of direct causal link to satisfy the standard on review. We agree.

However, in reliance on *Berndt v. Department of Labor & Indus.*, 44 Wn.2d 138, 265 P.2d 1037 (1954), and its progeny, the department contends that Dr. Sargent's testimony lacks probative value because it was based on unsupported assumptions and given in response to a hypothetical question which did not include allegedly undisputed material facts. Specifically, the department argues that the following material facts should have been included in the hypothetical question: (1) the deceased's lung condition between 1966 and 1972, (2) the chemical properties and effect of the toxic gas, (3) the deceased's smoking history,

and (4) the extent to which the deceased worked in an environment containing the gas.

We recognize that hypothetical questions must include those "undisputed fact[s] . . . material in the formulation of a fair, intelligent and sound opinion", *Vaupell Indus. Plastics, Inc. v. Department of Labor & Indus.*, 4 Wn. App. 430, 435, 481 P.2d 577 (1971), but the record reflects that Dr. Sargent was the deceased's attending physician and that the questions which elicited his testimony were not hypothetical. Though some of the information utilized in forming his opinion was outside of his firsthand knowledge, such as the autopsy report, the record shows that his testimony was a statement of personal medical opinion based on direct dealings with the deceased as an attending physician. An "expert may state his opinion upon the basis of his personal knowledge plus the testimony he has heard." (Footnote omitted.) 5 R. Meisenholder, Wash. Prac. § 354, at 346 (1965). This situation is therefore in sharp contrast to *Berndt v. Department of Labor & Indus., supra,* where the doctor whose testimony was questioned as to value had never seen the deceased "alive or dead" and had given his testimony based solely on the facts contained in the hypothetical. Dr. Sargent's testimony was subject to extensive cross-examination. Under the circumstances, unless the trial court can say that the cross-examination caused a "complete retraction or negation" of key testimony so as to leave "nothing of an objective nature in the record on which the jury could reasonably rely in affirmation of the claim of an injured workman," the weight, if any, to be placed on his testimony "is for the jury, not the court." *Venezelos v. Department of Labor & Indus., supra* at 73. A prima facie case was presented.

Reversed.

WILLIAMS and ANDERSEN, JJ., concur.